[No. 1270-1.    Division One—Panel 1.    February 20, 1973.]

LEONARD CALKINS *et al., Appellants,* v. THE BOEING COMPANY, *Respondent.*

*Anthony Schwab,* for appellants.

*Perkins, Coie, Stone, Olsen & Williams, David E. Wagoner,* and *Randall Revelle,* for respondent.

CALLOW, J.—Plaintiff Leonard Calkins brought suit against the defendant Boeing Company seeking damages for use by the defendant of three computer programs designed and suggested by the plaintiff while he was an employee of the defendant. The trial court granted the motion for summary judgment made by the defendant and the plaintiff appeals.

A summary judgment should be granted only if the pleadings, depositions, admissions, and affidavits considered by the trial court do not create a genuine issue of material fact between the plaintiff and the defendant moving for summary judgment. *Ferrin v. Donnellefeld,* 74 Wn.2d 283, 284, 444 P.2d 701 (1968).

In considering a defendant's motion for summary judgment, the trial court should consider the evidence and reasonable inferences therefrom in the light most favorable to the plaintiff. *Maki v. Aluminum Bldg. Prods.,* 73 Wn.2d 23, 436 P.2d 186 (1968); CR 56. *See generally* Trautman, *Motions for Summary Judgment: Their Use and Effect in Washington,* 45 Wash. L. Rev. 1 (1970). While issues of fact are claimed to exist, we find no conflict concerning material facts presented. The sole issue is one of law.

Plaintiff was employed by defendant as an IBM procedures planner. He was aware of the policy of the employer of soliciting suggestions from employees and knew the employer from time to time compensated employees who made suggestions useful to the business. In December 1965, he submitted on the defendant's suggestion system forms two suggestions concerning computer systems which he alleged would allow certain computers to efficiently print out lists and technical manuals. He had previously submitted two

other suggestions on suggestion system forms nearly identical to those utilized for the subsequent suggestions and stated on deposition that he had read the suggestion system rules.

The defendant's suggestion system staff after evaluating the suggestions declined to compensate the plaintiff on the grounds that the ideas were not original and were developed within his line of duty as an employee. The systems designed by the plaintiff have been implemented into the defendant's production process.

The applicable portion of the suggestion system rules reads as follows:

2. Each suggestion is submitted with the understanding that the Company shall have the right to publish, use or refuse it and that if it is published or used, the decision of the Company shall be final and conclusive as to the amount of a cash award, if any, and the person or persons entitled thereto, and all other matters concerning the suggestion.

3. A suggestion must be submitted on a current Boeing Suggestion System printed form, in accordance with and subject to the Suggestion System statement of policy, as supplemented, and signed by the Suggester(s) to be eligible for consideration, evaluation or award under the Suggestion System.

4. No payments or other monetary awards are made by the Company for its use of any ideas disclosed by employees with the exception only of (1) payments made under the terms of written agreements relating to inventions or other ideas and (2) awards made by the Suggestion System, in accordance with and subject to the Suggestion System statement of policy as supplemented.

The argument of the plaintiff is that he understood that if his idea was used, then he would be paid for it. The language of the rules, however, makes it clear that even if used, his award, *if any,* was to be the company's final decision. Not only was the plaintiff aware of the rules but language substantially identical to that in paragraph 2 was set forth on the suggestion form, and the plaintiff signed the form immediately below that language. There is no

justification from the rules for a state of mind in the plaintiff whereby he could expect payment from the defendant unless the defendant in its discretion chose to make payment. We are unable to draw inferences from the terms contrary to their plain wording or to find ambiguities or conflicts within the rules. The rules may be applied strictly, but they are clear.

An ambiguity exists when there is uncertainty in the meaning of the terms of a written instrument, and the terms are, therefore, capable of being reasonably understood in two or more senses. *Ladum v. Utility Cartage, Inc.,* 68 Wn.2d 109, 411 P.2d 868 (1966); *Nashem v. Jacobson,* 6 Wn. App. 363, 492 P.2d 1043 (1972). The company reserved to its absolute discretion the utilization of employee suggestions and could do so with or without payment. Paragraph 4 further made it clear that payment would only be made pursuant to a written contract or through the suggestion system.

The plaintiff contends that paragraph 2 does not apply because the defendant refused his suggestions. The choices are to publish, to refuse or to use the suggestion. The employee is not entitled to payment if the suggestion is refused; and if it is published or used, payment, if any, is up to the company. The question of payment was left to the *unfettered discretion* of the recipient of the suggestion. The participant was informed that under the suggestion system payment might be awarded to a participant but that a participant had no right to payment under the system. A participant had to be an employee of the company. An employee was not required to participate; but if he did, he submitted himself to the rules of this system. The employee was aware of the company's right not to pay. He was employed and paid to work within the area which gave rise to his suggestion. He would have been unaware of the company's need for a suggestion but for the employment and would not have the opportunity to fill the company's need and the chance for payment therefor but for his employment and the existence of the system. Chance though it

was, it was made available to him by the employer. The discretion to make payment or not for a suggestion was retained by the company who could thereby protect itself from employees who would devote efforts to securing payment for ideas conceived on company time for which payment was already made. In light of these factors, it was not an unjust enrichment under the law for the company to use the suggestion without making payment therefor.

In *Osborn v. Boeing Airplane Co.*, 309 F.2d 99 (9th Cir. 1962), it was said at page 102:

> Moreover, we do not think that the language of the provision in the Suggestion Form is so clear that the District Court could properly hold as a matter of law that Boeing reserved the right in its absolute discretion to appropriate a valuable idea for its own use without payment. It may be conceded that if this meaning were unambiguously clear there could be no recovery either on the basis of a contract implied-in-fact or on quasi-contractual principles. Contracts implied-in-fact, like express contracts, must rest upon a manifestation of mutual assent: they will not be implied in terms inconsistent with intentions clearly expressed nor in the face of a conclusive manifestation that no contract was intended. And, while it is true that quasi-contracts do not depend upon mutual assent and may be imposed by law contrary to the intent of one or both parties, quasi-contractual obligations rest upon equitable considerations and will not be imposed if in particular circumstances it would not be unjust for the recipient of something of value to retain and use it without paying for it. Thus an obligation to pay, ordinarily, will not be implied in fact or by law if it is clear that there was indeed no expectation of payment, that a gratuity was intended to be conferred, that the benefit was conferred officiously, or that the question of payment was left to the unfettered discretion of the recipient.

(Footnotes omitted.) The terms of the suggestion system now in use would not mislead an employee who read their austere, distinct and literal wording.

In *Carlini v. United States Rubber Co.*, 8 Mich. App. 501, 154 N.W.2d 595 (1967), an employee sued to recover addi-

tional compensation for two suggestions for which he claimed he had been inadequately compensated and for compensation for a suggestion for which he had been denied compensation. A summary judgment in favor of the employer was reversed because the employee had alleged "gross mistake" in the administration of the suggestion system. The court held that while the suggestion system rules stated that the "decision of the Suggestion Committee shall be final" the rules did not state what decisions were to be final and further noted that:

> The rules do not give the committee arbitrary power to set the award to be given to plaintiff, nor discretionary power to reject a suggestion that is ultimately put into use. The terms of the offer . . . specify that if an idea is used an award will be paid.

Under these facts, materially diverse from the facts before us, the cause was remanded for trial to determine if the suggestion committee had acted within the limits of its authority.

Here the company employer had reserved absolute discretion to publish, use or refuse a suggestion, and the decision of the company was final and conclusive as to the payment of any award at all. The decision in the *Carlini* case remanded the cause for trial as to the facts concerning the exercise of authority by the suggestion committee. The suggestion plan rules in that case made such action necessary. No question of fact exists here as to the administration of the rules. By the terms of the present suggestion system, there were no limits on the authority of the committee.

*Schott v. Westinghouse Elec. Corp.*, 436 Pa. 279, 259 A.2d 443 (1969), was also a suit brought by an employee under a suggestion plan similar in design but differing in content from the suggestion system before us. Under the Westinghouse plan, a minimum consideration was provided in the event of the use of a suggestion thereby imposing a limitation on the discretion of the committee. But of greater importance in comparing the two situations is that there

the employee was led to believe that his suggestion might later be used, it was used and was not rejected, as the committee did here, as unoriginal or as developed in the line of duty. Further, it is indicated that the employer there misled the employee when he proffered the suggestion indicating that he expected compensation. Here there is no basis on which the employee could expect payment in view of the employer's stand.

No legal agreement existed between the parties since the promise of the employer was illusory and payment for any suggestion was absolutely within the discretion of the employer. Hence, it was unenforceable since its performance was entirely discretionary on the part of the promisor. *Sandeman v. Sayres*, 50 Wn.2d 539, 314 P.2d 428 (1957); *Spooner v. Reserve Life Ins. Co.*, 47 Wn.2d 454, 287 P.2d 735 (1955).

An action in quasi-contract for unjust enrichment of the employer could not arise since it was clear that payment, if any, was up to the inclination of the employer. The employee knew it and proceeded under the rules of the employer's suggestion system nevertheless. *See Davis v. General Foods Corp.*, 21 F. Supp. 445 (S.D.N.Y. 1937); *Chandler v. Washington Toll Bridge Authority*, 17 Wn.2d 591, 137 P.2d 97 (1943).

The plaintiff is precluded from recovery by the rules of the suggestion system, and therefore we do not discuss the shop right doctrine raised as a second defense to the action. The judgment is affirmed.

HOROWITZ, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied April 13, 1973.

Review denied by Supreme Court June 7, 1973.