Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/10/2020 04:10 PM CDT

ALLEN D. ACKLIE, APPELLANT, V.
GREATER OMAHA PACKING CO., INC.,
A NEBRASKA CORPORATION,
APPELLEE.

___ N.W.2d ___

Filed June 12, 2020.    No. S-18-1128.

1. **Contracts: Appeal and Error.** The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below.

2. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.

3. **Contracts.** In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.

4. ____. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.

5. ____. A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.

6. ____. The determination of whether a contract is ambiguous is to be made on an objective basis, not by the subjective contentions of the parties suggesting opposing meanings of the disputed language.

7. ____. A contract must receive a reasonable construction and must be construed as a whole, and if possible, effect must be given to every part of the contract.

8. **Contracts: Proof.** A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract.

9. **Contracts.** To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract.

10. ____. It is a fundamental rule that in order to be binding, an agreement must be definite and certain as to the terms and requirements. It must identify the subject matter and spell out the essential commitments and agreements with respect thereto.

11. ____. Generally, mutuality of obligation is an essential element of every enforceable contract and consists in the obligation on each party to do, or permit something to be done, in consideration of the act or promise of the other. Mutuality is absent when only one of the contracting parties is bound to perform, and the rights of the parties exist at the option of one only.

12. ____. An agreement which depends upon the wish, will, or pleasure of one of the parties is illusory and does not constitute an enforceable promise.

Appeal from the District Court for Douglas County: LEIGH ANN RETELSDORF, Judge. Affirmed.

Ari D. Riekes and Steven J. Riekes, of Marks, Clare & Richards, L.L.C., for appellant.

Michael F. Coyle, Robert W. Futhey, and Brian J. Fahey, of Fraser Stryker, P.C., L.L.O., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FUNKE, J.

Allen D. Acklie brought this breach of contract action against Greater Omaha Packing Co., Inc. (Greater Omaha). The matter was tried, and the jury returned a verdict in favor of Greater Omaha. Acklie appeals, arguing that errors by the district court necessitate a new trial. Because we determine that Acklie's action is based on an unenforceable contract, we affirm the judgment.

## BACKGROUND

Acklie began working for Greater Omaha as a corporate controller in 1986. Acklie was part of Greater Omaha's senior management team and was responsible for supervising the corporation's financial accounts and managing office staff.

In 1989, the parties purported to enter into a deferred compensation agreement (the agreement). The agreement provides that in addition to a monthly salary, the company shall pay Acklie deferred compensation. The agreement further provides that Greater Omaha would establish a general ledger account and that the account would be funded at the discretion of Greater Omaha's board of directors. The agreement does not contemplate Acklie's contributing any amount of his salary to the deferred compensation account. Greater Omaha entered into similar deferred compensation agreements with other members of the senior management team.

In 1994, Greater Omaha terminated Acklie's employment, and in 2006, Acklie turned 60 years old. In 2011, Acklie demanded payment from Greater Omaha under the terms of the agreement. He contended that his right to deferred compensation vested upon his attaining age 60 and that payment became due on the first day of the first month following his attaining age 61. The agreement's vesting provision, paragraph 6, provides:

> The Employee's Deferred Compensation Account shall be one hundred percent (100%) vested upon and after the earlier of his completing ten (10) consecutive years of service commencing the date first above written or his attaining age Sixty (60), so long as he does not violate [the agreement's covenant not to compete provision], or if he terminates as a result of death.

Greater Omaha refused payment. As a result, in May 2012, Acklie filed this action against Greater Omaha in the district court for Douglas County, asserting claims of breach of contract and violation of the Nebraska Wage Payment and Collection Act, see Neb. Rev. Stat. § 48-1228 et seq. (Reissue 2010, Cum. Supp. 2018 & Supp. 2019). Acklie alleged that Greater Omaha breached the agreement by failing to pay him the amounts due to him. Acklie alleged that at the time of his firing in June 1994, the value of his interest in the account was $18,574.92.

Greater Omaha moved to dismiss the complaint, arguing that Acklie's rights under the agreement had not vested, because his employment with the company ended prior to his turning age 60. The court overruled the motion to dismiss, finding that the language of paragraph 6 is unambiguous and does not require that Acklie be employed with Greater Omaha at the time he turned 60 in order to become fully vested. The court stated that paragraph 6 has no "language limiting the receipt of the deferred compensation to employees who were still employed when they turned the specified age, nor was there a provision specifying that an employee is not entitled to any pension not accrued prior to termination." Greater Omaha filed an answer.

Acklie then moved for summary judgment. The court granted Acklie's motion for summary judgment with respect to Greater Omaha's liability for breach of contract and violation of the Nebraska Wage Payment and Collection Act. The court found that "the language vesting [Acklie's] deferred compensation is unambiguous," that a valid and enforceable contract exists between the parties, and that as a matter of law, Acklie was entitled to an amount equal to the fair market value of "the assets placed in the [account] as deferred compensation to [Acklie]." The court found that based on Acklie's claim, pursuant to § 48-1231, he is entitled to costs and attorney fees not less than 25 percent of the damages to be determined at trial.

The court found genuine issues of material fact regarding the amount of Acklie's damages. Acklie claimed that under the agreement, he is entitled to the fair market value of the assets in his deferred compensation account as of October 1, 2007, the first day of the first month following his turning age 61. Evidence adduced at the hearing showed that Greater Omaha established a single investment account for deferred compensation for all eligible employees and used the account to pay multiple employees pursuant to several

separate deferred compensation agreements. The court noted that an account record in evidence, dated December 31, 1993, lists contributions made in 1989 and 1990 for six employees, including Acklie, as well as their salaries and percent of distribution. The account record indicated that the total value of the account was $97,170.16 and that Acklie's share of distribution was $18,574.92. In a letter dated December 31, 2015, Greater Omaha stated that, as of September 2007, the fair market value of the total assets in the account was $98,130.63. Because the 2007 valuation did not itemize the asset distribution for each employee, there was no evidence of the value of Acklie's general ledger account and there was a triable issue of fact regarding damages.

Prior to the trial on Acklie's damages, the court conducted a bench trial on Greater Omaha's counterclaim for reformation based on mutual mistakes made in the agreement. Greater Omaha asked that the court reform the agreement's covenant not to compete provision, which prohibits working in the meatpacking business "within any of the restricted areas," to add a schedule specifying that the provision includes Omaha and Douglas County, Nebraska. In addition, Greater Omaha asked that the court reform the vesting provision to make clear that an employee vests upon attaining age 60 only if the employee is still working at the company. The court found that Greater Omaha failed to prove that there was a mutual mistake and dismissed its counterclaim.

At the trial on Acklie's damages, prior to the opening of evidence, the court and parties' counsel discussed the scope of trial. They recognized that in disposing of Greater Omaha's motion to dismiss and Acklie's motion for summary judgment, the court determined that under the unambiguous meaning of paragraph 6, Acklie's right had vested. Consequently, Greater Omaha could not present evidence that Acklie had not vested. However, the court considered how another provision of the agreement, paragraph 11, affected the evidence.

Paragraph 11, referred to by Greater Omaha as the "discretionary provision,"[1] provides:

> <u>Company's powers and liabilities</u>. The Company shall have full power and authority to interpret, and administer [the] [a]greement. The Company's interpretations and construction of any provision or action taken under [the] [a]greement, including any valuation of the Deferred Compensation Account, or the amount of recipient of the payment due under it, shall be binding and conclusive on all persons for all purposes. No member of the Board shall be liable to any person for any action taken or omitted in connection with the interpretation and administration of [the] [a]greement unless attributable to the member's willful misconduct or lack of good faith.

The court found paragraph 11 to be ambiguous when construed with other provisions within the agreement, such as paragraph 4, which provides for the creation of a deferred compensation account into which Greater Omaha may distribute funds, and paragraph 7, which establishes the terms of the benefits to be paid as deferred compensation. In ruling on Acklie's motion for summary judgment, the court found that pursuant to paragraph 7, Greater Omaha must pay Acklie the fair market value of the assets in his deferred compensation account as of the first day of the first month following his attaining age 61. The court determined that because paragraph 11 conflicts with the terms of paragraphs 4 and 7, the meaning of paragraph 11 is ambiguous and is therefore a question of fact for the jury.

Greater Omaha argued that it should be permitted to present evidence that paragraph 11 gave it the discretion to eliminate deferred compensation for employees who left the company prior to attaining age 60 or retiring, so long as the company did not act in bad faith. The court agreed, stating that Greater

---

[1] Brief for appellee at 1.

Omaha could suggest that Acklie is "entitled to zero, but you can't suggest he's not entitled." Acklie's counsel stated that the court's ruling conflicted with its prior determination that Acklie had vested. Acklie's counsel argued that if paragraph 11 were interpreted to contradict payment terms of the agreement, then the agreement would be unenforceable, but claimed the agreement is enforceable due to the duty of good faith and fair dealing. The court stated that the issue of vesting would not be relitigated.

Trial evidence showed that Greater Omaha contributed $50,083.23 to the account in 1989 and $26,000 in 1991. Greater Omaha maintained the investments in the account, but made no other contributions. Thereafter, Greater Omaha switched to a 401K compensation plan. The parties stipulated that on September 19, 2007, the account balance was $98,130.67, and that as of July 2018, the account balance was $195,274.32. Based on his calculation of the account's rate of growth between those two dates, Acklie testified that at the time of trial, the value of his share was $119,336.86.

Greater Omaha's president testified that on September 1, 1989, he held an office meeting with several employees, including Acklie, and presented them with identical deferred compensation agreements to sign and return. Greater Omaha's president testified that Acklie's account was reduced to zero because he left the company prior to vesting and that in addition to Acklie, the company had eliminated deferred compensation for two other employees who left the company prior to vesting. Greater Omaha's president stated that under the agreement, this was a matter of the company's discretion.

At the jury instruction conference, Acklie lodged an objection to the court's statement of the case and damages jury instructions, but the court found no merit to Acklie's proposed instructions. The court instructed the jury that as a matter of law, Acklie's deferred compensation rights under the agreement had vested. The court instructed the jury that "[v]esting

creates a contractual right that may be upheld by law. A vested right is fixed, settled, absolute, and not contingent upon anything." The court instructed the jury that Acklie carried the burden to prove (1) that Greater Omaha breached the agreement by failing to pay Acklie the amount due under the agreement, (2) that the breach of contract was a proximate cause of some damage to Acklie, and (3) the nature and extent of that damage. The court instructed the jury that "[i]f you find in favor of Acklie on his claim for breach of contract, then you must determine the amount of Acklie's damages. Acklie is entitled to recover the amount of money in the deferred compensation account to which he was entitled . . . ."

The jury returned a verdict in favor of Greater Omaha. The district court entered judgment on the verdict, and later overruled Acklie's motion for new trial. Acklie appealed. We moved the appeal to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[2]

## ASSIGNMENTS OF ERROR

Acklie assigns that the district court erred in (1) finding ambiguity in the agreement, (2) refusing proposed jury instructions, and (3) giving confusing, conflicting jury instructions.

## STANDARD OF REVIEW

[1,2] The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below.[3] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.[4]

---

[2] See Neb. Rev. Stat. § 24-1106 (Cum. Supp. 2018).

[3] *Johnson Lakes Dev. v. Central Neb. Pub. Power*, 254 Neb. 418, 576 N.W.2d 806 (1998).

[4] *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

## ANALYSIS

Acklie argues that the district court erred in determining that paragraph 11 is ambiguous when construed with other provisions of the agreement. Acklie contends that paragraph 11 is not ambiguous and that by finding ambiguity where it did not exist, the court's determination confused the jurors as to whether they were to decide whether Greater Omaha breached the agreement or were to exclusively consider the damages owed to Acklie. Acklie further argues that the court should have not permitted Greater Omaha to present evidence supporting its theory that it denied payment to Acklie, because the company had denied payment to two previous employees under the same contract. In response, Greater Omaha argues that the agreement grants it sole decision-making authority over whether to contribute to the deferred compensation account, as well as the amount of any payment due, and that the district court properly admitted extrinsic evidence to permit the jury to determine the meaning of paragraph 11.

[3-7] The issues raised in Acklie's appeal concern general contract principles. In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.[5] A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.[6] A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.[7] The determination of whether a contract is ambiguous is to be made on an objective basis, not by the subjective contentions of the parties suggesting

---

[5] *City of Sidney v. Municipal Energy Agency of Neb.*, 301 Neb. 147, 917 N.W.2d 826 (2018).

[6] *Id*.

[7] *Id*.

opposing meanings of the disputed language.[8] A contract must receive a reasonable construction and must be construed as a whole, and if possible, effect must be given to every part of the contract.[9]

We do not interpret the terms provided within paragraph 11 to be ambiguous. When viewed objectively, paragraph 11 is not susceptible of two reasonable but conflicting meanings. The provision unmistakably grants Greater Omaha the sole authority to interpret and administer the agreement. Likewise, the provision clearly grants Greater Omaha binding authority to determine the valuation of the account and the amount of any payment due under the agreement. We therefore conclude that paragraph 11 is unambiguous and must be understood according to its clear terms, without regard to extrinsic evidence.

However, we determine that the plain and ordinary meaning of paragraph 11, as well as paragraph 4, raises an issue which goes to the heart of Acklie's appeal: whether the agreement is an enforceable contract under which Acklie could recover. Acklie's lawsuit is premised on the claim that Greater Omaha breached the agreement by failing to pay him the amount due to him. If, pursuant to our obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below, we determine the agreement is unenforceable, then Acklie would be entitled to no relief and there would be no merit to the assignments of error Acklie has raised. Therefore, the principal issue before us is whether the agreement is enforceable.

Deferred compensation is presently earned but is to be paid to an employee in the future if he or she possesses the qualifications required by the plan and complies with the conditions

---

[8] *Johnson Lakes Dev., supra* note 3.

[9] *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

prescribed by it.[10] The conditions of the agreement in this case include the terms of paragraph 11, provided above, which permits Greater Omaha to take "binding and conclusive" "action[,]" "including any valuation of the [account], or the amount of . . . payment due under [the agreement]." In addition, paragraph 4 states that a general ledger account shall be established for the purpose of reflecting deferred compensation and that Greater Omaha will annually determine "an amount" to credit to the account. Critically, paragraph 4 uses clear language qualifying Greater Omaha's obligation to fund the account by stating, "The amount of the contribution and the decision as to whether to make one at all, shall be solely the decision of [Greater Omaha]." Pursuant to a plain and ordinary meaning of these terms, the decision of whether Acklie ever qualifies for payment under the deferred compensation plan is a matter left to Greater Omaha's sole discretion. The agreement clearly grants Greater Omaha the binding and conclusive authority to decide whether or not to pay Acklie.

[8-10] A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract.[11] To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract.[12] It is a fundamental rule that in order to be binding, an agreement must be definite and certain as to the terms and requirements.[13] It must identify the subject matter and spell out the essential commitments and agreements with respect thereto.[14]

---

[10] *Sindelar v. Canada Transport, Inc.*, 246 Neb. 559, 520 N.W.2d 203 (1994).

[11] *Houghton v. Big Red Keno*, 254 Neb. 81, 574 N.W.2d 494 (1998).

[12] *Id.*

[13] *Davco Realty Co. v. Picnic Foods, Inc.*, 198 Neb. 193, 252 N.W.2d 142 (1977).

[14] *Id.*

[11] Generally, mutuality of obligation is an essential element of every enforceable contract and consists in the obligation on each party to do, or permit something to be done, in consideration of the act or promise of the other.[15] Mutuality is absent when only one of the contracting parties is bound to perform, and the rights of the parties exist at the option of one only.[16] One of the most common types of promise that is too indefinite for legal enforcement is the promise where the promisor retains an unlimited right to decide later the nature or extent of his or her performance.[17] In that situation, the promisor's unlimited choice in effect destroys the promise and makes it illusory.[18] An illusory promise is one that is so indefinite that it cannot be enforced, or by its terms makes performance optional or entirely discretionary on the part of the promisor.[19]

[12] An agreement which depends upon the wish, will, or pleasure of one of the parties is illusory and does not constitute an enforceable promise.[20] Without a mutuality of obligation, the agreement lacks consideration and, accordingly,

---

[15] *Johnson Lakes Dev., supra* note 3; *De Los Santos v. Great Western Sugar Co.*, 217 Neb. 282, 348 N.W.2d 842 (1984).

[16] *Id.* Accord *Hecker v. Ravenna Bank*, 237 Neb. 810, 468 N.W.2d 88 (1991). See, 17 C.J.S. *Contracts* § 135 (2011); 17A Am. Jur. 2d *Contracts* § 22 (2016).

[17] *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000); *Davis v. General Foods Corporation*, 21 F. Supp. 445 (S.D.N.Y. 1937).

[18] *Floss, supra* note 17, citing 1 Samuel Williston, A Treatise on the Law of Contracts § 43 (3d ed. 1957); *Davis, supra* note 17. See *Midland Steel Sales Co. v. Waterloo Gasoline Engine Co.*, 9 F.2d 250 (8th Cir. 1925).

[19] *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051 (S.D. Cal. 2015), *affirmed sub nom. Wiseley v. Amazon.com, Inc.*, 709 F. Appx. 862 (9th Cir. 2017).

[20] *Johnson Lakes Dev., supra* note 3; *Pantano v. McGowan*, 247 Neb. 894, 530 N.W.2d 912 (1995), *disapproved on other grounds, Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019); *Chadd v. Midwest Franchise Corp.*, 226 Neb. 502, 412 N.W.2d 453 (1987).

does not constitute an enforceable agreement.[21] As relevant here, an agreement to pay such wages as the employer desires is invalid.[22]

In *De Los Santos v. Great Western Sugar Co.*,[23] this court considered a breach of contract action brought by a contractor which agreed to transport "'such tonnage of beets as may be loaded by'" a sugar company. Because the sugar company hired other truckers in addition to the contractor, the company terminated the contractor's services after 2 months. The contractor sought to enforce the parties' agreement, and the district court granted summary judgment in favor of the sugar company. On appeal, we stated the sugar company made no promises other than to pay for the transportation of beets which were in fact loaded by the company. We found that in the absence of a contractual provision specifying quantity, the company was not obligated to use the contractor's services, and the company's decision to cease using those services is not actionable.[24] In interpreting the contract at issue, we found that "the right of the defendant to control the amount of beets loaded onto the plaintiff's trucks was in effect a right to terminate the contract at any time, and this rendered the contract as to its unexecuted portions void for want of mutuality."[25]

In *Davis v. General Foods Corporation*,[26] the plaintiff revealed an idea and recipe to the defendant for fruit flavors to be used in homemade ice cream. The defendant agreed to pay the plaintiff reasonable compensation if it used the recipe

---

[21] See *Floss, supra* note 17.

[22] See, *Day's Stores, Inc. v. Hopkins*, 573 P.2d 1366 (Wyo. 1978); *Varney v. Ditmars*, 217 N.Y. 223, 111 N.E. 822 (1916); *Calkins v. Boeing Company*, 8 Wash. App. 347, 506 P.2d 329 (1973).

[23] *De Los Santos, supra* note 15, 217 Neb. at 283, 348 N.W.2d at 844.

[24] See *id*.

[25] *Id*. at 286, 348 N.W.2d at 845.

[26] *Davis, supra* note 17.

and idea in its business, and it wrote that any compensation paid would rest solely in the defendant's discretion. The court found the parties' agreement was so indefinite that it could not support a binding obligation. The court found that the defendant's promise was illusory, reasoning that by agreeing to the defendant's unlimited right to decide the compensation to be paid, the plaintiff was in effect throwing herself upon the mercy of those with whom she contracted.[27]

Applying the foregoing principles to this case, we determine that Greater Omaha's promise to pay Acklie deferred compensation is fatally indefinite. The conditions relating to payment were not fully determined and were left to the discretion of one contracting party only. Per the express terms of the agreement, Acklie's expectancy interest is no greater than the possibility of receiving payment from Greater Omaha, unless Greater Omaha chose not to make such a payment. These terms did not create a binding contract or one under which Acklie could establish a right to any specific funds.[28] One of the primary reasons that an illusory promise is unenforceable is that the indefiniteness of such a promise precludes the court from being able to fix exactly the legal liability of the parties to the contract.[29] We find that the indefinite features of the agreement here are like those addressed in *De Los Santos* and *Davis*, because Greater Omaha's right to control the amount of payment due, if any, is in effect a right to terminate the contract at any time. Accordingly, the agreement is not a valid, legally enforceable contract under which Acklie could recover.

The arguments made by Acklie and Greater Omaha in anticipation of a determination that the agreement is unenforceable are not persuasive. While both parties contend that

---

[27] See *id.*

[28] See, *Charter Inv. & Dev. Co. v. Urban Med. Serv.*, 136 Ga. App. 297, 220 S.E.2d 784 (1975); *Calkins, supra* note 22.

[29] *Fagerstrom, supra* note 19.

the duty of good faith and fair dealing saves the agreement from being rendered illusory, they provide no legal authority demonstrating why such is the case under the circumstances of this case. To be sure, there are circumstances under which the duty of good faith and fair dealing is sufficient to avoid the finding of an illusory promise.[30] However, this case does not present such a circumstance, because the illusory nature of the agreement stems from its express terms, and Greater Omaha's exercise of rights clearly granted to it cannot constitute bad faith on its part.[31]

The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract.[32] However, in order for the implied covenant of good faith and fair dealing to apply, there must be in existence a legally enforceable contractual agreement.[33] In the case at bar, we have held that Acklie failed to prove the existence of an enforceable contract. Therefore, the implied covenant of good faith and fair dealing does not save the agreement from being rendered illusory.

Additionally, there is no merit to the argument that the covenant not to compete provision saves the agreement from being rendered illusory. No party challenged the district court's conclusion that the covenant not to compete provision is unenforceable, because it prohibits only working "within any of the restricted areas" and the agreement does not specify any restricted areas. Moreover, the fact that Greater Omaha

---

[30] See, *Milenbach v. C.I.R.*, 318 F.3d 924 (9th Cir. 2003); *Fagerstrom, supra* note 19; *Corthell v. Summit Thread Co.*, 132 Me. 94, 167 A. 79 (1933); *Horizon Corp. v. Westcor, Inc.*, 142 Ariz. 129, 688 P.2d 1021 (Ariz. App. 1984); *Mezzanotte v. Freeland*, 20 N.C. App. 11, 200 S.E.2d 410 (1973). See, also, *Chadd, supra* note 20.

[31] See *De Los Santos, supra* note 15.

[32] *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 655 N.W.2d 390 (2003).

[33] *Cimino v. FirsTier Bank*, 247 Neb. 797, 530 N.W.2d 606 (1995).

made two contributions does not create an enforceable agreement, because the contract's unambiguous language imposes no obligation upon Greater Omaha to pay Acklie any money from the account.

Because the agreement lacks mutuality of obligation, the agreement does not create a binding obligation, making the agreement unenforceable. Because the agreement is unenforceable, all of Acklie's claims fail as a matter of law. Where the record adequately demonstrates that the decision of a trial court is correct—although such correctness is based on a ground or reason different from that assigned by the trial court—an appellate court will affirm.[34] Because we find that Acklie cannot recover under the agreement, we need not address his remaining assignments of error.

## CONCLUSION

For the foregoing reasons, the judgment is affirmed.

AFFIRMED.

---

[34] *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018).