**In re ACRO BUSINESS FINANCE CORP., Debtor.**

**ACRO Business Finance Corp., Plaintiff,**

v.

**M & I Marshall and Ilsley Bank, Stearns Bank, North Star Bank, Landmark Community Bank, Excel Bank, Donald E. Glesmann, People's Bank of Commerce, Virgil Eihusen, John Hanson, and ArrowHead Consulting Group, Ltd., Defendants.**

**Bankruptcy No. 06–41364.**
**Adversary No. 06–04432.**

United States Bankruptcy Court, D. Minnesota.

Dec. 21, 2006.

Clinton E. Cutler, Cynthia A. Moyer, Ryan Murphy, Fredrikson & Byron, P.A., Minneapolis, MN, for Debtor.

James A. Rubenstein, Lorie A. Klein, Moss & Barnett, Minneapolis, MN, for M&I Bank.

Monica L. Clark, Dorsey & Whitney LLP, Minneapolis, MN, for Stearns Bank, Excel Bank MN.

Cheryl L. Hauch, Daniel A. Haws, John E Brandt, Murnane Brandt, St Paul, MN, for North Star Bank.

T. Chris Stewart, Anastasi & Associates, P.A., Stillwater, MN, for Landmark Community Bank.

Connie Lahn, Fafinski Mark &Johnson, P.A., Eden Prairie, MN, for Arrowhead Consulting Group.

## MEMORANDUM OPINION AND DECLARATORY JUDGMENT

ROBERT J. KRESSEL, Bankruptcy Judge.

This proceeding came on for trial on the plaintiff's complaint seeking declaratory relief. Various defendants have counterclaimed against the debtor and cross-claimed against each other. Cindy Moyer and Ryan Murphy appeared on behalf of the plaintiff. James Rubenstein and Kevin Busch appeared on behalf of defendant M & I Marshall and Ilsley Bank. John Thomas and Monica Clark appeared on behalf of defendant Stearns Bank. Connie Lahn appeared on behalf of defendant Arrowhead Consulting Group. Thomas Stewart appeared on behalf of defendant Landmark Bank. Daniel Haws and John Brandt appeared on behalf of defendant North Star Bank.[1]

The court has jurisdiction to hear and decide this adversary proceeding under 28 U.S.C. §§ 157, 1334, and 2201. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## FACTS

The plaintiff, who is the debtor in a chapter 11 case, is an asset-based lender that makes loans to small businesses. In making such loans, the debtor sells part of the loans to other lenders through participation agreements. Participations are not loans; they are contractual arrangements between a lender and a third party, in which the third party, or participant, provides funds to the lender. *Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics)*, 269 F.3d 726, 736 (6th Cir.2001). The lender, in turn, uses the funds from

---

1. The complaint and cross-claim against John Hanson and Virgil Eihusen was voluntarily dismissed. Neither People's Bank of Commerce nor Donald E. Glesmann filed a response or made an appearance.

the participant to make loans to the borrower. *Id.*

Participations allow lenders to spread risk amongst themselves and enable them to make large loans without exceeding legal lending limits. *Id.* In addition, the lead lender benefits by receiving origination and servicing fees and the immediate repayment of a portion of the loan from the participants. *Id.* The participant benefits from the lead lender's security interest and priority of payment. *Id.*

The debtor entered into contracts entitled "Participation Agreements" with, among others, Stearns Bank N.A., Excel Bank Minnesota, North Star Bank, Landmark Community Bank, N.A., and Arrow-Head Consulting Group, Ltd. (collectively the "participants"). The Participation Agreements clearly state that the participants are purchasing part of a loan and not making a loan to the debtor:

> No amount paid by Participant to Originator to purchase the Participation shall be considered as a loan by Participant to Originator. Participant is purchasing and acquiring legal and equitable ownership of its participating interest and is not making a loan to Originator, and no debtor/creditor relationship exists between the Participant and Originator as a result of this Agreement.

*Exhibit A* § 15.

On August 5, 1997 the debtor entered into a Credit and Security Agreement with M & I's predecessor, National City Bank of Minneapolis, whereby NCB extended a $5 million revolving line of credit to the debtor in exchange for a security agreement in substantially all of the debtor's assets. The debtor's credit limit with M & I depended on the lesser of the Maximum line or "85% of the Eligible Loans thereafter." *Exhibit L* § 1.1. The credit line was secured by an interest in the "Collateral." *Id.* The agreement broadly defined Collateral to include most of the debtor's property. *Id.* As part of the Collateral and Security agreement, the debtor agreed to "execute and deliver to the Lender all assignments of UCC's and other documents evidencing or perfecting the Borrower's interests in collateral securing the Accounts as the Lender may reasonably request, subject to the Participant's interest." *Id.* at § 3.1. The agreement has been renewed over the years and the loan is now owned by M & I. The approximate balance of the loan, as of the date of the bankruptcy petition was $12,610,000.

In 2004, due to a change in the Financial Accounting Standards Board's Statements of Financial Accounting Standard No. 140, the debtor changed the way in which participation loans were recorded. As a result, the debtor reclassified its participated loans from a net asset to a secured borrowing on its financial statements. This change is noted in the debtors financial statement for the year 2004.

In late Spring of 2006, M & I informed the debtor that it would not be renewing its line of credit with the debtor and required that the debtor pay M & I the full amount of its claim within thirty days. The debtor was unable to meet this demand, so on July 12, 2006, the debtor filed its Chapter 11 bankruptcy petition. On August 17, 2006, the debtor sought a declaratory judgment that the Participation Agreements are true participations and not loans and that M & I's security interest does not extend to the interests of the Participants. M & I counterclaimed against the debtor and cross-claimed against the other defendants and contends that the Participation Agreements are actually loans and that M & I's security interest extends to the participated loans. Some of the parties also ask that M & I's claim be equitably subordinated.

## DISCUSSION

### *The Participation Agreements Are True Participations and Not Loans.*

■ The Sixth Circuit Court of Appeals established the following test to determine whether an agreement constitutes a participation:

1) money is advanced by a participant to a lead lender;

2) the participant's right to repayment only arises when the lead lender is paid;

3) only the lead lender can seek legal recourse against the borrower; and

4) the document is evidence of the parties true intentions.

*Bayer,* 269 F.3d at 736–737 (citing *In re Coronet Capital Co.,* 142 B.R. 78, 82 (Bankr.S.D.N.Y.1992)).

■ The participants' agreements with the debtor meet each requirement of a true participation. First, the participants advanced money to the debtor. This fact is undisputed. Second, the Participation Agreements indicate that the right to repayment arises when the debtor receives payment. Section 4 of the Participation Agreements provides that "[d]istributions of principal, interest and other payments charges or fees to Participant with respect to the Participation shall be made and payable only out of Payments received or collected by Originator with respect to the Loans from Borrower or Obligors or proceeds of the Collateral received by Originator." In addition, Section 1 of the Participation Agreements states that:

The participation includes such share of all repayments of principal, not readvanced to Borrower, received by Originator on account of the Loans pursuant to the Loan Agreement, and a share of interest and fees received by Originator under Section 2 of the Loan Agreement to which Participant is entitled pursuant to Paragraph 5.

Both sections make it clear that the participants do not receive payment unless and until the debtor receives payment from the borrowers.

Third, Section 12 of the Participation Agreements provides that "[p]articipant shall have no right to, and shall not, make any appearance in or assert a position in any legal proceeding, including but not limited to any collection matter with respect to the Loans, any Collateral, or any of the Obligors." This meets the third requirement of the Sixth Circuit's test.

Finally, Section 15 of the Participation Agreements, which is entitled "Nature of the Participation Interest," provides that "[n]o amount paid by participant to Originator to purchase the Participation shall be considered as a loan by Participant to Originator. Participant is purchasing and acquiring legal and equitable ownership of its participant interest and is not making a loan to Originator, and no debtor/creditor relationship exists between the Participant and Originator as a result of this Agreement." This provision is evidence of the parties' true intention to enter into a participation agreement and not a loan. The fourth and last requirement of the Sixth Circuit's test is met.

### *The Change in the Accounting Rules Does Not Alter the Nature of the Participation Agreements.*

■ M & I argues that the characterization of the participated loans as secured borrowing in the debtor's financing statements from 2004 indicates that the agreements were loans and not participations. However, Jack Hart, president of the debtor, testified that the change in the financing statement resulted from an alteration in accounting rules and not a change in the legal relationship embodied in the Participation Agreements. FAS 140 changed only the way that certain assets and liabili-

ties were reported on accounting statements and not the requirements of a participation agreement.

### M & I's Security Interest Did Not Extend to the Participated Loans.

■ A security interest attaches to collateral when 1) value has been given; 2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and 3) the debtor has authenticated a security agreement that contains a description of the collateral. Minn.Stat. § 336.9–203(b). The issue in this proceeding is whether the Credit and Security Agreement between M & I and the debtor contained a description of collateral which included the participated loans. Although the plain language of the agreement seems to exclude the participated loans from the collateral, there is enough ambiguity to justify looking at extrinsic evidence to determine whether the parties intended to include the participated loans in the collateral for the security agreement. The extrinsic evidence indicates that the parties did not intend to do so, and thus M & I's security interest does not extend to the participated loans.

### A. The Plain Language of the Credit and Security Agreement is Ambiguous.

While the security agreement is mostly consistent with the view that M & I's security interest does not extend to the participants' interests, there is some ambiguity. The agreement gives M & I a security interest in the "Collateral." *Exhibit L* § 3.1. The definition of "Collateral" in the Credit and Security Agreement encompasses most of the debtor's property, including the "Collateral Accounts" of the Debtor, but it does not include the "Special Accounts." "Collateral Account" means

the debtor's bank accounts into which "sums, Collateral, proceeds of Collateral and/or payment of Receivables are or will be deposited, but which does not include any Special Account." *Exhibit L* § 1.1. " 'Special Account' means an account ... into which is deposited and/or withdrawn from time to time only those sums representing the Participant's portion of any loans of Borrower to its borrowers or account debtors." *Exhibit L* § 1.1. Because there is a distinction between the Collateral Accounts and the Special Accounts, and M & I's security interest does not extend to the Special Accounts, it would seem that the intention of the parties was to exclude the participated loans from the security agreement. However, Section 6.10(b) states that "amounts deposited in the Collateral Account ... shall not be subject to withdrawal by the Borrower ... except for the portions thereof representing the interests of Participant pursuant to the Participation Agreements which *may be* deposited into the Special Account." *Exhibit L* § 6.10(b) (emphasis added). This seems to indicate that there is no requirement that the debtor deposit the participants' portions of the loans into the Special Accounts, and therefore some of the Collateral Accounts may contain some or all of the proceeds from the participated loans.

> In addition, Section 6.10(a) states that
> The Borrower shall deposit any payments on Receivables into the Bank's Collateral Account. Until so deposited, the Borrower shall hold all such payments in trust for, and subject to the interests of the Participants pursuant to the Participation Agreements, as the property of the Lender and shall not commingle such payments with any of its other funds or property, except that the Borrower shall also deposit amounts due the Participants pursuant to the Participation Agreements into the Bank's Collateral Account or such other

accounts in which the Lender has appropriate security interests. *Exhibit L* § 6.10(a).

This requires the debtor to deposit proceeds from the participated loans into the Collateral Account prior to depositing the funds into the Special Account. Thus, it seems that M & I's security interest extends to the proceeds from the participated loans which must be deposited into the Collateral Accounts. However, Section 8.2(e) makes clear that there is a distinction between "Collateral" on one hand and the participations on the other. ("To the extent that the Lender's rights and remedies set fourth in subparagraphs (b), (c), and (d) above involve *Collateral or monies in which any Participant has an interest* pursuant to the Participation Agreement. . . .") *Exhibit L* § 8.2(e) (emphasis added). Such a distinction would be unnecessary if Collateral included the money in which the participants had an interest.

In addition, Section 6.10(e) provides that:

> *Notwithstanding anything herein to the contrary,* the Lender understands that amounts that may be due and owing Participants as a result of Borrower's loans to its borrowers or account debtors may be held in trust by the Borrower for such Participants pursuant to the Participation Agreements and the Borrower may not have beneficial interest to such amounts *nor would the interest of Lender under its Security Interest extend to such interest of the Participant.* Such amounts will be initially deposited into the Bank's Collateral Account or into such other accounts in which the Lender has appropriate security interests. *Exhibit L* § 6.10(e) (emphasis added).

The first portion of this provision excludes the participated loans from M & I's security interest regardless of the contradictory sections in the rest of the Credit and Security Agreement. However, the last sentence of this provision requires the debtor to deposit the proceeds from the participated loans into an account which is subject to M & I's security interest. Therefore, it is ambiguous whether the parties truly intended to exclude the participated loans from M & I's security agreement.

The phrase "subject to the Participant's interest" is included in the agreement at Sections 3. 1, 3.2, 6.10(a), and 8.1(e). The debtor negotiated with NCB for the addition of this provision for the express purpose of excluding the participants' interests from the security interest. Despite the debtor's efforts, it is unclear what the legal effect is of this phrase in any of the aforementioned sections. However, it does indicate the debtor's intention to exclude the participated loans from M & I's security interest.

The exclusion of the participated loans from the Borrowing Base also fails to prove the intentions of the parties. Both M & I and the debtor admit that the participated loans were excluded from the Eligible Loans which were used to calculate the Borrowing Base, and the language of the Credit and Security Agreement supports this. However, the definition of "Participant" excludes the loans of the participants without providing a reason. *Exhibit L* § 1.1. The Eligible Loans exclude other loans besides the participated loans, and the Borrowing base does not determine the scope of the Collateral. Therefore, the omission of the participated loans from the Eligible Loans does not necessarily mean that the Credit and Security agreement did not cover them.

The many conflicting provisions of the Credit and Security Agreement obscure the true intentions of the parties who created the agreement. Although most of the

contract provisions lean toward excluding the participants' interests from the security agreement, the plain language of the agreement is insufficient to determine the true intent of the parties to the agreement. Therefore, the court must look to extrinsic evidence.

### B. Extrinsic Evidence Indicates that the Parties Intended to Exclude the Participated Loans from M & I's Security Interest in the Collateral.

Under Minnesota law, "[i]n interpreting the meaning of an unambiguous contract, the court cannot consider anything other than the contract. However, if a contract term is ambiguous, extrinsic evidence can be considered by the trier of fact to help it determine the parties' intent." *Winthrop Resources Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 470 (8th Cir.2004) (citations omitted). Because the Credit and Security Agreement is ambiguous as to whether the parties intended to exclude the participated loans from the Collateral, extrinsic evidence is permissible in order to determine the intention of the debtor and M & I.

The extrinsic evidence unequivocally indicates that *both* parties intended that M & I's security interest not extend to the participated loans. Tony Lemaire, the former Vice President and Manager of National City Bank and the representative who negotiated and signed the Credit and Security Agreement for the Bank, testified that NCB never intended in include the participated loans as collateral under the Credit and Security Agreement. Jack Hart, President of the debtor and the other signatory to the agreement, also testified that the debtor had never intended to include the participated loans as collateral for lending purposes. In addition, neither party treated the loans as collateral under the agreement prior to the debtor's bankruptcy. Because both parties to the Credit and Security Agreement agree that M &

I's security interest does not encompass the participants' interest, the best interpretation of M & I's security interest is that it does not extend to the participated loans.

In addition, the original financing statement filed by NCB on October 7, 1998 specifically excludes "the interests of the Participant(s) as described in the Participation agreement(s)." *Exhibit X.* The financing statement makes it clear that M & I did not consider the participated loans to be part of its secured collateral. If M & I believed that its security agreement extended to the participated loans, it would not have specifically excluded the participated loans from its financing statement. This gives further proof that the debtor and M & I intended to exclude the Participant' interests from the Collateral, and therefore M & I's security interest does not extend to the participated loans. This is the rare case where all of the extrinsic evidence points to the same interpretation.

### C. M & I's Possession of the Notes Is Irrelevant.

■ M & I Bank argues that its possession of the Participation Agreements creates a security interest in the participated loans under Minn.Stat. § 336.9–203(b)(3). However Official Comment 4 to § 9–203 states that:

> The other alternatives in subsection (b)(3) dispense with the requirement of an authenticated security agreement and provide alternative evidentiary tests. Under paragraph (3)(B), the secured party's possession substitutes for the debtor's authentication under paragraph 3(A) if the secured party's possession is "pursuant to the debtor's security agreement." That phrase refers to the debtor's agreement to the possession for the purpose of creating a security interest.

■ It is established that the debtor did not intend to create a security interest in

the Participation Agreements. Therefore, possession of the agreements was not "pursuant to the debtor's security agreement" because the debtor did not agree to M & I's possession of the Participation Agreements for the purposes of creating a security interest. M & I's possession of the Participation Agreements is thus insufficient to create a security interest. Possession is, after all, a method of perfecting a security interest, not creating one.

### M & I's Conduct Does Not Require Equitable Subordination of Its Claim.

 Three conditions must be present before the power of equitable subordination may be invoked: (1) the claimant must have engaged in some kind of inequitable conduct; (2) the misconduct must have resulted in injury to the creditors of the debtor or conferred an unfair advantage on the claimant; and (3) equitable subordination must not be inconsistent with the Bankruptcy Code. *Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.),* 850 F.2d 1275, 1282 (8th Cir.1988).

■ The participants failed to show inequitable conduct which would necessitate equitable subordination of M & I's claims. The only inequitable conduct the participants' allege is that M & I took a legal position that the Participation Agreements were loans and that its security interest extended to the agreements. Although this position was contrary to M & I's previous course of dealing, the taking of an advantageous legal position is not the type of inequitable conduct that warrants the subordination of M & I's interest.

### M & I's Has No Right to Attorney's Fees.

Because M & I failed to prove that either the participations were in fact loans or that its security agreement extended to the participated loans, it is not entitled to attorney's fees.

## ORDER

THEREFORE, IT IS ORDERED:

1. The Participation Agreements are true participations.

2. M & I Marshall and Ilsley Bank has no interest in the Participation Agreements, the Participated Loans or the collateral underlying such loans.

3. The participants' request to equitably subordinate M & I Marshall and Ilsley Bank's interest is denied

4. M & I Marshall and Ilsley Bank is not entitled to an award of attorney's fees.

5. Except as provided above, all other claims, counterclaims, and cross-claims are denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.