Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/28/2022 09:08 AM CDT

- 839 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

Community First Bank, appellant, v. First
Central Bank McCook, appellee.

___ N.W.2d ___

Filed February 4, 2022.    No. S-21-143.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Summary Judgment: Jurisdiction: Appeal and Error.** When reviewing cross-motions for summary judgment, an appellate court acquires jurisdiction over both motions and may determine the controversy that is the subject of those motions; an appellate court may also specify the issues as to which questions of fact remain and direct further proceedings as the court deems necessary.

4. **Contracts.** The meaning of a contract and whether a contract is ambiguous are questions of law.

5. **Judgments: Appeal and Error.** On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.

6. **Loans: Banks and Banking.** In a participation, the lead bank generally collects payments from the borrower and forwards the appropriate portion of payments to the participating bank, and the duty to pay loan participants arises when proceeds are derived from the participating loan.

7. **Contracts: Loans: Banks and Banking.** Participations are not loans; they are contractual arrangements between a lender and a third party, in which the third party, or participant, provides funds to the lender. The

- 840 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
310 NEBRASKA REPORTS
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

lender, in turn, uses the funds from the participant to make loans to the borrower.

8. **Banks and Banking: Intent.** Factors that indicate that a transaction is a true participation include (1) money is advanced by a participant to a lead lender, (2) a participant's right to repayment only arises when a lead lender is paid, (3) only the lead lender can seek legal recourse against the borrower, and (4) the document is evidence of the parties' true intentions.

9. **Loans: Banks and Banking: Interest.** Factors that indicate that a purported participation may in fact be a disguised loan include (1) guarantee of repayment by the lead lender to a participant, (2) participation that lasts for a shorter or longer term than the underlying obligation, (3) different payment arrangements between the borrower and the lead lender and the lead lender and the participant, and (4) discrepancy between the interest rate due on the underlying note and interest rate specified in the participation.

10. **Contracts: Loans: Intent.** To determine whether an agreement is a true participation agreement or a disguised loan, courts first look to the written agreement to discern the parties' intent, limiting their inquiry to the words of the agreement itself so long as the agreement sets forth the parties' intent clearly and unambiguously.

11. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.

12. **Contracts.** When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.

13. **Contracts: Evidence.** A contract found to be ambiguous presents a question of fact and permits the consideration of extrinsic evidence to determine the meaning of the contract.

14. **Contracts.** A contract must receive a reasonable construction and must be construed as a whole. And, if possible, effect must be given to every part of a contract.

Appeal from the District Court for Red Willow County: DAVID W. URBOM, Judge. Reversed and remanded for further proceedings.

Michael D. Samuelson and Robert B. Reynolds, of Reynolds, Korth & Samuelson, P.C., L.L.O., for appellant.

- 841 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
310 NEBRASKA REPORTS
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

David W. Pederson, of Pederson Law Office, for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Community First Bank (Community First) appeals the order of the district court for Red Willow County which overruled Community First's motion for summary judgment, sustained the motion for summary judgment of First Central Bank McCook (First Central), and dismissed Community First's complaint in which it set forth "causes of action" all based on a claim for breach of contract. Community First generally argues that the district court erred when it determined that the contract between the two banks was a participation agreement that did not create a debtor-creditor relationship between the two banks. We conclude that the contract between the parties is ambiguous, and we further determine that a genuine issue of material fact exists regarding the provisions of the contract between the parties as to whether their contract is a participation agreement or a loan and that neither party has shown that it is entitled to judgment as a matter of law. We therefore reverse the order granting summary judgment in favor of First Central, and we remand the cause to the district court for further proceedings.

## STATEMENT OF FACTS

On April 15, 2020, Community First filed a complaint against First Central in which it set forth causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, conversion, unjust enrichment, and declaratory judgment. Community First generally alleged that in 2017, First Central had approached Community First "about providing [$300,000] in financing." Community First alleged that it accepted First Central's offer and that the parties entered into a contract dated June 1, 2017, pursuant to which Community

- 842 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

First's interest under the June 2017 contract "matured on August 1, 2017." Community First alleged that on four subsequent occasions, First Central sought extensions of the maturity date and Community First agreed to the extensions, the last of which extended the maturity date to December 15, 2018. Community First alleged that it did not agree to any further extensions and that following the final maturity date, it requested payment in full from First Central. Community First alleged that First Central refused to pay what was owed under the contract and its extensions. As more fully described below, the contract between the parties consisted of a document entitled "Participation Agreement," sometimes referred to herein as "agreement," into which a June 1, 2017, letter between the parties is incorporated.

In support of the cause of action for breach of contract, Community First alleged that First Central had breached the contract when it refused to provide the funds to which Community First was "entitled upon maturity" under the contract. In setting forth causes of action for breach of implied covenant of good faith and fair dealing, conversion, and unjust enrichment, Community First similarly alleged that First Central had committed the claimed torts when it refused to pay what Community First alleged it was owed under the contract.

Community First sought a judicial declaration of its rights under the 2017 contract and its extensions, including a determination of when and from whom Community First was entitled to be repaid its $300,000 plus interest. Community First also sought a judgment of damages against First Central for what it allegedly was owed under the 2017 contract and extensions.

First Central filed an answer in which it admitted that it and Community First had entered into a contract that it characterized as a "Participation Agreement" on June 1, 2017, and that the parties had entered into a "subsequent Participation Agreement" on November 1, 2017, that replaced the June contract. First Central further admitted that Community First

- 843 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
310 NEBRASKA REPORTS
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

had requested payment in full from First Central and that First Central had declined the request. However, First Central denied that it had breached the contract with Community First or committed any of the torts claimed by Community First. First Central denied every other allegation in Community First's complaint and asserted that "such allegations incorrectly or inaccurately describe subsequent interactions between" the parties. First Central asserted that Community First's claims were without legal basis under the terms of the contract between the parties.

Both parties moved for summary judgment, asserting that there was no genuine issue of material fact and that the respective party was entitled to judgment as a matter of law. The district court held an evidentiary hearing on the competing motions for summary judgment on November 23, 2020. At the hearing, the court received evidence offered by Community First that included the parties' filings in this case and the affidavit of a Community First officer, which affidavit included various attachments. The court also received evidence offered by First Central that included affidavits of First Central officers.

Community First offered, and the court received, the affidavit of Jon Hidy, a branch president and member of the board of directors of Community First. Hidy attached several documents to his affidavit and stated that each of the attachments was a true and correct copy that had been retained by Community First or had been produced by First Central as part of discovery in this case.

Among the attachments to Hidy's affidavit was a document titled "Participation Agreement" and executed between First Central and Community First on June 1, 2017. In the agreement, First Central was designated as "Originating Financial Institution" and Community First was designated as "Participant." Recitals at the beginning of the agreement stated that First Central "has made or will make one or more advances" and "may, from time to time, make additional advances" to Donald and Norma Klein, designated as "Borrower," and that

- 844 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

Community First "has contributed or will contribute toward advances made by" First Central to the Kleins. The terms of the agreement provided, inter alia, as follows: First Central would sell to Community First "an ownership interest in certain indebtedness owed by" the Kleins and that Community First would purchase such interest "without recourse to" First Central. Such transaction "shall not be construed as creating a debtor-creditor relationship between" First Central and Community First. Community First would purchase an undivided interest in the "Shared Obligation," which was defined as "[t]he Loan(s) and corresponding security outlined in a Commitment Letter dated **June 1, 2017**." As part of the agreement, Community First represented to First Central, inter alia, that "[t]he decision to purchase a participation interest in the Shared Obligation is based solely on [Community First's] independent evaluation of [the Kleins, the Kleins'] creditworthiness and existing information relating to the lien status of any collateral given to secure the obligation." The agreement included signature pages for each of the parties. The signature page for Community First was signed by an officer on June 1, 2017, and stated, inter alia, that its "Funding Commitment" was $300,000 and "Maturity Date" was August 1, 2017. The signature page for First Central was signed by an officer and stated, inter alia, that its "Funding Commitment" was $561,006.04 and, instead of August 1, 2017, the "Maturity Date" was December 15, 2030. The June 1, 2017, letter from First Central to Community First incorporated into the agreement stated that it was written "to confirm [Community First's] interest in participating in the credit facility to [First Central's] borrower, [the Kleins]." The letter then set forth "the terms under which [First Central was] prepared to offer this participation to [Community First]." Among the terms listed were a loan amount of $861,006.04 and a participation amount of $300,000. The "Purpose" was listed as "Refinance Existing Debt." Referring to the length of time, the "Term" listed in the June 1, 2017, letter was described as "[y]our commitment shall be until August 1, 2017," and

- 845 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

"Payments" were described as "[a]ll principal and accrued interest is due on August 1, 2017." Provisions regarding the interest rate, servicing fee, and security were also set forth. The letter concluded, "If the terms and conditions of this letter meet with your approval, please indicate your acceptance of this commitment by signing and returning the enclosed copy." The letter was signed as being acknowledged and accepted on June 1, 2017, by an officer of Community First.

Documents which indicated extensions of the June 2017 contract were also attached to Hidy's affidavit. As stated above, the letter dated June 1, 2017, and the signature page for Community First that was part of the agreement indicated a "Maturity Date" of August 1, 2017. Additional documents attached to Hidy's affidavit purported to extend the "Maturity Date" from August 1, 2017, to, respectively, November 1, 2017; February 1, 2018; July 15, 2018; and finally, December 15, 2018.

The document indicating an extension to November 1, 2017, was a letter from First Central to Community First, which was virtually identical to the June 1, 2017, letter except that the "Term" was described as "[y]our commitment shall be until November 1, 2017," and "Payments" were described as "[a]ll principal and accrued interest is due on November 1, 2017." Included with the letter was a signature page similar to the signature page for Community First that was part of the June 2017 agreement except that it listed "Maturity Date" as November 1, 2017. The letter was signed as being acknowledged and accepted by an officer of Community First, and the attached signature page was also signed by the officer.

The documents indicating an extension to February 1, 2018, were a letter dated November 30, 2017, from First Central to Community First and a participation agreement between First Central and Community First dated November 30, 2017. As with the document indicating the earlier extension, the letter and the agreement were virtually identical to the June 1, 2017, letter and the June 2017 agreement. In the November 30

- 846 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

letter, the "Term" was described as "[y]our commitment shall be until February 1, 2018," and "Payments" were described as "[p]rincipal and accrued interest payment due on December 15, 2017." The letter was signed as being acknowledged and accepted by a Community First officer. The November 30 agreement was virtually identical to the June 2017 agreement but the signature page for Community First listed a "Maturity Date" of February 1, 2018.

The documents indicating an extension to July 15, 2018, were a letter dated June 29, 2018, from First Central to Community First and a participation agreement dated June 29, 2018, between First Central and Community First. The content of the letter was virtually identical to that of the June 1, 2017, letter except that "Term" was described as "[y]our commitment shall be until July 15, 2018," and "Payments" were described as "[p]rincipal and accrued interest payment due on July 15, 2018." Also, the content of the agreement was virtually identical to that of the June 2017 agreement except that the "Shared Obligation" was defined as "[t]he Loan(s) and corresponding security outlined in a Commitment Letter dated **June 29, 2018**," and that the signature page for Community First listed "Maturity Date" as July 15, 2018. The agreement was executed by officers of the respective parties on June 29, 2018.

The document indicating the alleged final extension to December 15, 2018, was a copy of an email chain between officers of the respective parties. The first email was sent from an officer of First Central to an officer of Community First at 2:25 p.m. on September 27, 2018, and stated, "If we pay one year's interest—$170.76 per day for 360 days would you be OK extending the note until 12-15-18?" The next email was a response from the officer of Community First at 2:31 p.m. that same day and stated, "Yes." The final email was a reply from the First Central officer at 2:57 p.m. that same day and stated, "Done—we'll send it in the morning."

In addition to these documents regarding the contract and extensions between Community First and First Central,

- 847 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

Hidy attached three documents obtained from First Central through discovery. The first document was a copy of a promissory note in the amount of $861,006.04 dated March 30, 2011. The borrowers were listed as the Kleins, and First Central was listed as the lender. The promissory note had a maturity date of December 15, 2030, and it was to be paid in 20 annual installments beginning December 15, 2011. The second document was a participation agreement between First Central and another bank that was not Community First. The agreement was executed March 30, 2011. The signature pages for both First Central and the participating bank stated that the "Maturity Date" was December 15, 2030. The respective signature pages also stated that the "Funding Commitment" for First Central was $461,006.04 and that the "Funding Commitment" for the participating bank was $400,000. The third document was First Central's transcript for the Kleins' promissory note showing transactions and outstanding balances between March 31, 2011, and March 17, 2020.

In addition to describing the attached documents set forth above, Hidy stated the following in his affidavit: In 2017, First Central approached Community First "about providing [$300,000] in financing." At the same time the June 2017 contract was entered into, Community First provided $300,000 to First Central. On September 28, 2018, Community First received $26,249.22 from First Central, but no other funds had been received from First Central relating to Community First's advance of $300,000 and Community First had not agreed to any further extensions beyond December 15, 2018. Following that date, Community First requested payment in full from First Central, and First Central declined the request. Hidy stated that Community First was owed principal and accrued interest of $355,217.45 as of October 22, 2020, with interest continuing to accrue. Hidy concluded his affidavit by stating that Community First and First Central did not agree "on whether the $300,000 financing . . . constitutes a loan or a participation interest" and that First Central asserted that

- 848 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

Community First had acquired a participation interest while Community First contended that the arrangement was a loan from Community First to First Central.

Three affidavits of officers of First Central were offered by First Central and, with minor exception for certain paragraphs, received by the court. Two of the affidavits were by Don Moore, the president and chief executive officer of First Central.

In his first affidavit, Moore stated that based on his experience in banking, he was familiar with participations and applicable banking regulations. The form that was the basis for the participation agreement between First Central and Community First was regularly used by First Central for participations and generally provided that the participating bank was being sold an ownership interest in indebtedness, that such interest was an undivided interest in the debt of the borrower, that such sale was without recourse against the originating financial institution, and that the agreement was not to be construed as creating a debtor-creditor relationship between the original financial institution and the participating bank. The reason participation was sought in this case was that in 2017, First Central was in the process of refinancing the indebtedness of the Kleins, and Moore referred to the loan for $861,006.04 that First Central had made to the Kleins in 2011 with a maturity date of December 15, 2030. First Central was looking to participate portions of the Kleins' indebtedness in order to keep First Central within regulatory lending limits. Community First expressed interest in acquiring a share of the Klein indebtedness. Thereafter, First Central and Community First executed the June 1, 2017, agreement, as well as the letter dated June 1, 2017, and Community First transferred $300,000 "in exchange for an undivided interest in the Klein loans." Although Moore referred to the 2011 loan to the Kleins, he did not refer to the existence of other loans, if any, to the Kleins or why he referred to the Klein "loans" in the plural.

Moore also stated that the Kleins experienced difficulties with respect to the refinancing and that therefore, Community

- 849 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

First agreed to certain extensions in order to enable the refinancing to be completed. With each extension, the parties signed a new participation agreement with the same terms as the June 1, 2017, agreement. The last such agreement was executed in June 2018. Thereafter, in July and August, First Central "discovered some shortage in collateral which was to serve as security for the Klein indebtedness," and First Central "immediately advised [Community First] of the potential problem with the collateral." After discovering the collateral shortage, First Central made no additional loan advances to the Kleins. When the Kleins made an interest payment of $26,249.22 in September, First Central paid the full amount to Community First "in an effort to work with [Community First] in good faith due to the Klein default." The Kleins filed for bankruptcy on June 3, 2019, and again on August 13, 2020. Collection procedures that First Central had initiated after discovering the collateral shortage were stayed by the Kleins' bankruptcy filing.

Moore further stated that as a general matter, in circumstances such as the present case, a financial institution may execute a participation agreement with another bank when the originating bank cannot loan additional funds to a borrower because to do so would exceed regulatory lending limits. A participation agreement in such a circumstance must be without recourse because if the originating institution could be liable to the participating bank in the event of the borrower's default, then the originating institution could be in excess of regulatory lending limits. Moore attached to his affidavit a copy of a statement of policy of Nebraska's Department of Banking and Finance to the effect that when a loan is participated in order to avoid exceeding the originating bank's legal lending limit, the originating bank may not place the participation with recourse or otherwise agree to buy the debt back if the borrower defaults or otherwise fails to make payment. Moore finally stated that any attempt to classify the arrangement between First Central and Community First in this case as a loan "would not only

- 850 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

be contrary to the specific terms of the Agreement itself, but it would convert this into a 'with recourse' relationship in violation of the regulatory lending limits."

In the admitted portions of his second affidavit, Moore stated that if the agreement was a loan as claimed by Community First, then First Central would have been in violation of regulatory lending limits and would have been subject to sanctions.

The other exhibit offered by First Central, received by the court in whole, was the affidavit of an officer of First Central who stated that he had been personally involved in the agreements with Community First that were the subject of this action. He generally stated that during his communications with officers of Community First, none of them had stated or implied that they believed the participation agreement to be a loan with recourse or that they understood the contract to create a debtor-creditor relationship between the parties.

On January 20, 2021, the district court filed an order ruling on the competing motions for summary judgment. The court began its analysis by stating that Community First claimed that the June 2017 contract created a debtor-creditor relationship between the parties, whereas First Central contended that the agreement was a participation and not a loan. The court noted that "there is little law on what constitutes a participation agreement in Nebraska," and it cited Nebraska case law which generally described participation agreements. The court then cited precedent from another jurisdiction that set forth "factors that determine whether a participation agreement amount[s] to the sale of an undivided interest in the total loan package or creates a debtor-creditor relationship." The court noted that the agreement in this case provided, inter alia, that First Central "'will sell'" and Community First "'shall buy'" an "'undivided interest'" and that First Central was required to hold Community First's portion of interest payments "'in trust'" for the benefit of Community First. The court particularly noted an express provision that the agreement "'shall not be construed as creating a debtor-creditor relationship.'" The court found

- 851 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

that the agreement was a participation and did not create a debtor-creditor relationship between the parties. The court also found that there was no genuine issue of material fact and that First Central was entitled to judgment as a matter of law. The court therefore sustained First Central's motion for summary judgment, overruled Community First's motion for summary judgment, and dismissed the complaint.

Community First appeals the order of the district court which ruled on the parties' motions for summary judgment and dismissed Community First's complaint.

## ASSIGNMENTS OF ERROR

Community First claims that the district court erred when it overruled Community First's motion for summary judgment and when it sustained First Central's motion for summary judgment.

## STANDARDS OF REVIEW

[1,2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *In re Estate of Lakin, ante* p. 271, 965 N.W.2d 365 (2021), *modified on denial of rehearing ante* p.389, 966 N.W.2d 268. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

[3] When reviewing cross-motions for summary judgment, an appellate court acquires jurisdiction over both motions and may determine the controversy that is the subject of those motions; an appellate court may also specify the issues as to which questions of fact remain and direct further proceedings as the court deems necessary. *Id*.

[4,5] The meaning of a contract and whether a contract is ambiguous are questions of law. *In re Estate of Karmazin*,

- 852 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

299 Neb. 315, 908 N.W.2d 381 (2018). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id*.

## ANALYSIS

Community First claims that the district court erred when it sustained First Central's motion for summary judgment and when it overruled Community First's motion for summary judgment. We have jurisdiction over both cross-motions for summary judgment, and therefore, we may determine the controversy that is the subject of the motions or we may specify the issues as to which questions of fact remain and direct further proceedings. See *In re Estate of Lakin, supra*.

As framed by the parties and the district court, the controversy in this case is whether the contract between the parties is a participation or a loan. The assumption of the parties and the district court appears to be that if the contract is a participation agreement, then First Central did not breach the agreement and it is entitled to judgment in its favor, but if the arrangement is a loan, then First Central breached the contract when it refused to pay all principal and interest after the last extended maturity date of December 15, 2018, and Community First is entitled to judgment in its favor.

Although the legal distinctions between a participation and a loan inform our resolution of the cross-motions for summary judgment, the action brought by Community First hinges on Community First's allegation that First Central breached the contract between the parties. The first cause of action set forth in Community First's petition is the allegation that First Central breached the contract between the parties when it refused to pay Community First all principal and interest after the 2018 applicable maturity. Community First set forth additional causes of action, but those causes of action all hinged on Community First's allegation that First Central had breached the contract. Community First also sought declaratory judgment regarding First Central's obligations under the contract.

- 853 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
310 NEBRASKA REPORTS
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

Therefore, determining the controversy in this case requires us to focus on the specific requirements of the contract to which the parties agreed, that is whether the transaction between the parties is properly characterized as a participation or as a loan, in order to determine whether First Central breached the contract. Therefore, jurisprudence regarding the interpretation of contracts guides our analysis.

Our analysis of the meaning of the contract in this case is informed by the law regarding participations and, in particular, the law related to the distinctions between participations and loans. Following our review of the law pertaining to the identified distinction, we next review the law governing interpretation of contracts. We then apply general concepts of contract law, informed by our understanding of the law relating to participations and loans, to determine whether the district court in the context of summary judgment motions properly determined that the contract was a participation and granted judgment in favor of First Central, whether Community First was entitled to judgment as a matter of law, or whether there remain genuine issues of material fact which preclude entry of summary judgment.

*Law Regarding Participations and Distinguishing*
*True Participations From Disguised Loans.*

Although there are some Nebraska cases discussing participation agreements, we do not appear to have addressed standards for determining whether a given arrangement constitutes a true participation or whether it is instead a disguised loan. We review Nebraska law generally describing participations, and we look to precedent from other jurisdictions regarding standards for distinguishing between participations and loans.

In *Northern Bank v. Federal Dep. Ins. Corp.*, 242 Neb. 591, 593, 599, 496 N.W.2d 459, 461-62, 464 (1993), we described the following features of participations:

> [A] "participated loan" arises under an agreement in which one bank, known as the lead bank, transfers a

- 854 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

loan it has arranged, or a part thereof, to a second bank, known as the participating bank. The participated loan device is intended to create in the borrower the illusion that it is the lead bank which is making the loan. For that reason it is used whenever the lead bank cannot or does not wish to lend its own funds, but nonetheless wishes to keep the borrower as a potential customer for other banking services. When a participated loan is transferred without recourse against the lead bank, . . . the participating bank assumes the credit risk, that is, the risk of the borrower's repayment or default.

The lead bank is responsible for gathering and passing credit information on to the participating bank, for securing the proper loan documentation, and for collecting the repayments made by the borrower. The lead bank typically receives compensation as the result of the "spread," that is, the difference between the rate of interest charged the borrower by the lead bank and the lesser rate of interest the participating bank is to receive.

. . . .

Relying on the diverse contractual language found in the various participation agreements, the widespread majority of cases holds that the participated loan device results in the sale of the designated percentage of the loan to the participating bank with the lead bank acting as the participant's agent to collect and forward the appropriate repayments and to service the loan.

[6] As stated in *Northern Bank v. Federal Dep. Ins. Corp., supra*, in a participation, the lead bank generally collects payments from the borrower and forwards the appropriate portion of payments to the participating bank. We recognized in *Central States Resources v. First Nat. Bank*, 243 Neb. 538, 545, 501 N.W.2d 271, 276 (1993), that "[t]he duty to pay loan participants arises when proceeds are derived from the participating loan."

- 855 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
310 NEBRASKA REPORTS
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

[7] Other courts have described the following features of participations. "Participations are not loans; they are contractual arrangements between a lender and a third party, in which the third party, or participant, provides funds to the lender. . . . The lender, in turn, uses the funds from the participant to make loans to the borrower." *In re ACRO Business Finance Corp.*, 357 B.R. 785, 787-88 (D. Minn. 2006) (citing *In re: AutoStyle Plastics, Inc.*, 269 F.3d 726 (6th Cir. 2001)).

> In the typical participation, the lead lender transfers to the participant not only the benefits to be received from a share in the underlying loan (i.e. a *pro rata* share in the principal and interest payments) but also the risk of the borrower's default. The lead lender makes no warranties or guarantees about the borrower's ability to repay the loan or about the worth of the collateral in the event of default. If the borrower does default, the participant is entitled to a *pro rata* share of any monies received upon liquidation of the collateral, but it has no right of recourse against the lead lender.

*In re Sackman Mortg. Corp.*, 158 B.R. 926, 932 (S.D.N.Y. 1993).

Although our case law has discussed features of participations as described above, we do not appear to have addressed the issue set forth by the parties in this case, that is, how to distinguish whether a particular arrangement is a participation or whether it is in fact a loan between banks. As explained below, courts have recognized that a transaction that purports to be a participation may be a disguised loan. Courts have generally developed two tests to determine whether a transaction is a true participation or whether it is in fact a disguised loan. We describe the two tests below; they inform our analysis in this case.

[8] Adhering to the jurisprudential consensus in this area, the court in *In re Corporate Financing, Inc.*, 221 B.R. 671, 678 (E.D.N.Y. 1998) (internal quotation marks omitted), set forth

- 856 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

the following factors that indicate that a transaction is a true participation:

1) money is advanced by participant to a lead lender;

2) a participant's right to repayment only arises when a lead lender is paid;

3) only the lead lender can seek legal recourse against the borrower; and

4) the document is evidence of the parties' true intentions.

[9] The court in *In re Corporate Financing, Inc.*, also set forth the following factors that indicate that a purported participation may in fact be a disguised loan:

1) guarantee of repayment by the lead lender to a participant;

2) participation that lasts for a shorter or longer term than the underlying obligation;

3) different payment arrangements between the borrower and lead lender and lead lender and participant; and,

4) discrepancy between the interest rate due on the underlying note and interest rate specified in the participation.

221 B.R. at 678-79 (internal quotation marks omitted).

Discussing the factors that indicate that a purported participation is instead a disguised loan, the court in *In re Corporate Financing, Inc.*, stated:

The most determinative factor of all of these is the risk allocation involved in the transaction. If the participant does not bear the same risk of loss as the seller, or if the seller has made a guarantee of payment to the participant, the transaction is generally considered to be a loan and not a sale . . . .

221 B.R. at 679. Regarding the length of the term of the arrangement, the court stated that when the purported participation "has a stated term longer or shorter than the term of the underlying [indebtedness], this is an indication of a loan and

- 857 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

not of a participation." *Id.* at 680. See *In re Coronet Capital Co.*, 142 B.R. 78 (S.D.N.Y 1992).

Another court stated, "Factors which may cause a transaction to be other than a true loan participation include anything that indicates the participants are not subject to the normal risks of ownership, such as guaranteed returns by the lead institution, or required repurchase agreements." *McVay v. Western Plains Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987).

[10] Finally, it is important to note that in cases considering whether an arrangement is a true participation or a disguised loan, courts have stated that to determine whether an agreement is a true participation agreement or a disguised loan, courts "first look[] to the written agreement to discern the parties' intent, limiting [their] inquiry to the words of the agreement itself so long as the agreement sets forth the parties' intent clearly and unambiguously." *In re Sackman Mortg. Corp.*, 158 B.R. 926, 932 (S.D.N.Y. 1993).

*Contract Law.*

The federal courts cited above put the focus on the terms of the specific agreement between the parties when determining whether the agreement sets forth a participation or a loan. We have similarly focused on the words of the parties' contract. *Northern Bank v. Federal Dep. Ins. Corp.*, 242 Neb. 591, 496 N.W.2d 459 (1993). The causes of action set forth by Community First hinge on the allegation that First Central breached the contract between the parties, and therefore, the determination of whether either party is entitled to judgment as a matter of law depends on interpretation of the contract and what is required of First Central under the contract. We herefore review standards applicable to interpretation of contracts.

[11-14] The meaning of a contract and whether a contract is ambiguous are to be determined by a court as questions of law. See *In re Estate of Karmazin*, 299 Neb. 315, 908 N.W.2d 381 (2018). In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Bierman v. Benjamin*, 305 Neb. 860, 943 N.W.2d 269 (2020).

- 858 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id*. When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Id*. The fact that the parties have suggested opposing meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Id*. A contract found to be ambiguous presents a question of fact and permits the consideration of extrinsic evidence to determine the meaning of the contract. *Id*. In addition, a contract must receive a reasonable construction and must be construed as a whole. *Equestrian Ridge v. Equestrian Ridge Estates II*, 308 Neb. 128, 953 N.W.2d 16 (2021). And, if possible, effect must be given to every part of a contract. *Id*.

*Application to Facts of This Case.*

We apply the above principles of law regarding contracts as informed by the jurisprudence regarding participations to determine if the contract between Community First and First Central is clear or if there is ambiguity regarding the meaning of the contract. As set forth below, we conclude that there is ambiguity in the contract caused by the inconsistencies between the maturity dates stated in the June 1, 2017, letter and on the signature pages for the respective parties, and that there is further ambiguity caused by tension between the agreement's disavowal of the debtor-creditor relationship between First Central and Community Bank and the lack of recourse language as compared to the arguable promise of absolute payment indicated in the June 1, 2017, letter, as well as the lack of clarity regarding who is paying on August 1, 2017. These ambiguities create a question of fact regarding what specific indebtedness is the subject of the contract. Such ambiguity leads us to consider extrinsic evidence which creates a genuine issue of material fact regarding whether the specific indebtedness is a 2011 promissory note or some other short-term

- 859 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

indebtedness of the Kleins to First Central. The ambiguity also creates an issue whether the contract is a disguised loan and, if so, what First Central's obligations were with regard to payment of principal and accrued interest to Community First on the stated maturity date. As a result of these genuine issues of material fact, neither party has shown that it is entitled to judgment as a matter of law.

We note first that the contract between the parties is composed of the June 2017 agreement; the "Commitment Letter dated **June 1, 2017**," which is arguably incorporated by the "Shared Obligation" provisions of the agreement; and the several extensions. The initial "Maturity Date" in the letter was August 1, 2017, and the extensions included the same relevant provisions with the exception of the last extended "Maturity Date." We focus on the language of the June 2017 arrangement, including the contents of the letter dated June 1, 2017, to determine the meaning of the contract between the parties.

The district court in this case determined that the contract between the parties constituted a participation and not a loan from Community First to First Central. In reaching this conclusion, the court particularly noted certain provisions of the agreement which showed that the agreement had the typical features of a participation. We acknowledge that several such provisions tend to support a determination that the agreement includes the features of a participation such as those identified in the legal precedent set forth above. See *Northern Bank v. Federal Dep. Ins. Corp.*, 242 Neb. 591, 496 N.W.2d 459 (1993). See, also, *In re Corporate Financing, Inc.*, 221 B.R. 671 (E.D.N.Y. 1998).

However, the precedent cited above also sets forth factors that indicate when a purported participation is actually a disguised loan. See *In re Corporate Financing, Inc., supra*. Certain factors, such as "different payment arrangements" and "discrepancy between the interest rate due on the underlying note and interest rate specified in the participation," do not tend to indicate that the agreement in this case is a disguised

- 860 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
310 NEBRASKA REPORTS
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

loan. See *id.* at 678, 679 (internal quotation marks omitted). But the remaining factors, such as "guarantee of repayment by the lead lender to a participant" and especially "participation that lasts for a shorter or longer term than the underlying obligation," may be relevant in this case and may indicate that the transaction between the parties is a disguised loan rather than a true participation. See *id.* at 678 (internal quotation marks omitted).

The June 1, 2017, letter, which is incorporated into the agreement, states with regard to the underlying obligation that "[a]ll principal and accrued interest is due on August 1, 2017," and the signature page for Community First in the agreement shows that the "Maturity Date" for Community First's funding commitment was also August 1, 2017. This would indicate that the term of Community First's participation was the same as the term of the underlying obligation. But in the agreement, the signature page for First Central shows a "Maturity Date" of December 15, 2030, for First Central's funding obligation. The December 15, 2030, maturity date for First Central's funding obligation creates an ambiguity within the contract regarding the term of the underlying indebtedness. This discrepancy between maturity dates is problematic.

The term of the underlying obligation and whether there is a significant difference between the term of the underlying obligation and the term of the contract are factors relevant to consideration of whether a purported participation may instead be a disguised loan. The term of the underlying obligation in this case is a material fact because the stated term of Community First's participation ends on August 1, 2017 (later extended to December 15, 2018), and if the term of the underlying obligation in fact ends on December 15, 2030, as stated on the signature page of the agreement for First Central, then the term of the participation is significantly shorter than the term of the underlying obligation. We further observe that the June 1, 2017, letter states that "[a]ll principal and accrued interest is due on August 1, 2017," which could suggest a guarantee

- 861 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

of repayment to Community Bank, and such guarantee could be inconsistent with the language of the agreement under which payments to Community Bank were a function of repayments of advances by the Kleins.

Because there is an ambiguity within the contract, we look to extrinsic evidence to clarify the meaning of the contract. In particular, we look to extrinsic evidence which would show whether the contract provides for participation in indebtedness with a maturity date of December 31, 2030, or indebtedness with the much earlier maturity date of August 1, 2017, later extended to December 15, 2018. The promissory note attached to Hidy's affidavit is relevant to this issue. The Kleins' promissory note was dated March 30, 2011, in the amount of $861,006.04; the borrowers were the Kleins; and First Central was the lender. The note was to be paid in 20 annual installments beginning December 15, 2011, and, most significantly, although the maturity date in the June 1, 2017, letter was 2017 later extended to 2018, the maturity date of the promissory note was December 15, 2030. The amount of the note and the borrower listed on the promissory note were the same as those listed in the June 1, 2017, letter, which explained the "Shared Obligation" under the agreement, and the maturity date of the note was the same as the "Maturity Date" listed for First Central on its signature page of the agreement. This would indicate the March 30, 2011, promissory note was the underlying obligation in which Community First was to participate under the parties' contract.

Despite such evidence indicating that the promissory note is the underlying indebtedness, the June 1, 2017, letter stated with regard to the underlying obligation that "[a]ll principal and interest is due on August 1, 2017." Such date is not consistent with the promissory note being the underlying obligation, because as we have stated above, the maturity date of the note is December 15, 2030, payable in annual installments beginning December 15, 2011. Nothing in the promissory note indicates any payment was due August 1, 2017, much less

- 862 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

that all principal and accrued interest was due on that date. Why did the parties agree to a maturity date of August 1, 2017, unless, perhaps, it refers to a due date of another obligation not disclosed in the record?

We note that the June 1, 2017, letter and subsequent letters extending the maturity date stated that the purpose of the underlying obligation was to "Refinance Existing Debt." This would appear to indicate a refinancing of the promissory note and possibly other indebtedness of the Kleins to First Central. Such refinancing conceivably could have involved some sort of short-term indebtedness of the Kleins with all principal and accrued interest being due on the date stated in the letter. However, First Central provided no evidence showing any obligation from the Kleins to First Central that had a maturity date consistent with the August 1, 2017, date listed in the June 1 letter or the dates listed in the subsequent extensions.

Conflicting evidence in this case indicates a genuine issue of material fact regarding not only the maturity date of the underlying obligation, but also the specific indebtedness from the Kleins that was arguably the underlying obligation in which Community First was participating. It is not clear whether the underlying obligation is the 2011 promissory note or some other unspecified indebtedness of the Kleins to First Central. This uncertainty further creates ambiguity regarding the meaning of the contract between the parties, particularly the "Maturity Date" listed for Community First. If the only underlying obligation is the 2011 promissory note, then the statement in the letter dated June 1, 2017, that all principal and accrued interest was due on August 1, 2017, becomes ambiguous. The Kleins were not obligated to pay all principal and accrued interest on the promissory note on August 1. That creates a question of fact as to whether the principal and accrued interest due on August 1 were related to some indebtedness of the Kleins other than the note or whether the reference meant that First Central was obligated to pay all principal and accrued interest to Community First on that date, independent

- 863 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

of any payments the Kleins were required to make on the underlying debt.

In summary, we conclude that the evidence in this case indicates at least three genuine issues of material fact. First, is the maturity date of the underlying obligation that is the subject of the contract August 1, 2017, later extended to December 15, 2018, as indicated by the commitment letters and the signature page for Community First, or is it December 15, 2030, as indicated by the signature page for First Central? Second, is the underlying obligation the promissory note that has a maturity date of December 15, 2030, or is the underlying obligation some unidentified short-term indebtedness of the Kleins to First Central that has a maturity date of August 1, 2017, later extended to December 15, 2018? Finally, if the underlying obligation is the promissory note that has a maturity date of December 15, 2030, what is the meaning of the reference in the commitment letter and its extensions to all principal and accrued interest being due on August 1, 2017, later extended to December 15, 2018, and does such reference indicate a guarantee by First Central to pay Community First all principal and accrued interest on that date, independent of the Kleins' obligations and performance under the promissory note?

Because genuine issues of material fact exist, First Central has not shown that it is entitled to judgment as a matter of law, and we therefore reverse the district court's grant of summary judgment in favor of First Central. However, Community First also has not shown its entitlement to judgment as matter of law, and therefore, the district court did not err when it overruled Community First's motion for summary judgment. Therefore, the cause should be remanded to the district court for further proceedings to determine, inter alia, the issues set forth in the preceding paragraph.

## CONCLUSION

We conclude that genuine issues of material fact exist regarding First Central's obligations under the contract between

- 864 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
310 NEBRASKA REPORTS
COMMUNITY FIRST BANK v. FIRST CENTRAL BANK McCOOK
Cite as 310 Neb. 839

the parties and that neither party has shown it is entitled to judgment as a matter of law. The district court therefore erred when it sustained First Central's motion for summary judgment and dismissed Community First's complaint. We reverse the district court's order dismissing Community First's complaint, and we remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.